# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-01888-SCT

*PATRICK BERNARD GILES a/k/a PATRICK GILES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2013 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| TRIAL COURT ATTORNEYS: | CURT CROWLEY |
| | STEVEN KILGORE |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER A. COLLINS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/17/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.    A Leake County jury found Patrick Bernard Giles guilty of statutory rape and sexual battery. The Circuit Court of Leake County sentenced Giles to ten years for statutory rape and twenty-five years for sexual battery, to run consecutively. Here, Giles argues that he is entitled to a new trial because he received ineffective assistance of counsel and the prosecutor made improper closing arguments.

¶2.    Because several of Giles's ineffective assistance of counsel claims are not based on

facts fully apparent from the record, this Court dismisses these claims without prejudice to Giles's ability to raise them in post-conviction proceedings, should he choose to do so. We hold that Giles's other claims of ineffective assistance of counsel are based on facts fully apparent from the record but are without merit. We also hold that the prosecutor's closing arguments were not improper and Giles is not entitled to reversal on that basis. For these reasons, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3.     On June 3, 2012, nineteen-year-old Giles attended a party at the home of his friend, D.J., in Carthage, Mississippi. At the party, Giles met D.J.'s twelve-year-old niece, Dolores, who was staying with D.J. for the week.[1] After Giles left the party, D.J.'s twelve or thirteen-year-old daughter, Barbara, sent Giles a text message informing him that Dolores was "interested" in him. Giles requested Dolores's cell phone number from Barbara. When Barbara gave Giles the cell phone number, she informed him that Dolores was twelve years old.

¶4.     Giles began sending text messages to Dolores. After about a day and a half of communication, Giles began texting Dolores about sex. On Wednesday, June 6, 2012, Giles sent Dolores a text message stating that he wanted to meet her in person. After Dolores assured Giles that her uncle and aunt were not home, the pair agreed to meet behind her uncle's barn. Behind the barn, Giles engaged in vaginal and anal intercourse with Dolores.

¶5.     After this encounter, Dolores told Barbara about what had happened, but she did not

---

[1] The Court uses the pseudonyms "Dolores" and "Barbara" to protect the identities of the juvenile witnesses.

tell any adults because she was afraid she would get in trouble. Giles continued to send Dolores text messages for several weeks. But, because Dolores's parents canceled service to her cell phone, no record of the communication between Dolores and Giles exists. After Dolores's cellular telephone service was canceled, she sent some text messages to Giles from Barbara's cell phone. However, Dolores deleted the text messages from Barbara's cell phone before returning it to Barbara, and Barbara testified that she no longer had that cell phone.

¶6.    Over the next few months, rumors circulated in Carthage, Mississippi, about an illicit romance between Dolores and Giles. In February 2013, Dolores's parents confronted her about the rumors, and she told them about her encounter with Giles. After Dolores's grandmother learned about the incident from Dolores's parents, she contacted the Carthage Police Department and filed a report. Based on the contents of that report, officers from the Carthage Police Department arrested Giles and took him to the Leake County Jail. Instead of interviewing Dolores themselves, the police officers sent her to a forensic interviewer at the Wesley House in Meridian, Mississippi.

¶7.    On February 28, 2013, Kevin Cross and Chance Henderson, investigators with the Carthage Police Department, interviewed Giles at the Leake County Jail. They informed Giles of his *Miranda*[2] rights, and he signed a waiver of those rights. Giles talked to the investigators for about thirty minutes.[3] At the end of the interview, he wrote the following statement, which we quote verbatim:

_____

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] No audio or video recording or transcript was made of the jailhouse conversation between Giles and the investigators.

3

We was you Dixon it a hourse ride she ask for my phone number I didn't know old how she was I didn't ask Than she call and text in ask me to come over So I went to DJ house Only he was not there so went to the darn We was kiss in had sex

¶8.   On July 2, 2013, a Leake County grand jury returned an indictment against Giles, charging him with statutory rape, pursuant to Section 97-3-65(1)(b) of the Mississippi Code,[4] and sexual battery, pursuant to Section 97-3-95(1)(d) of the Mississippi Code.[5]

¶9.   Giles presented an alibi defense at trial. He testified that, on June 6, 2012, the day the

---

[4] Section 97-3-65 of the Mississippi Code provides:

(1) The crime of statutory rape is committed when:

. . .

(b) A person of any age has sexual intercourse with a child who:

(I) Is under the age of fourteen (14) years;

(ii) Is twenty-four (24) or more months younger than the person; and

(iii) Is not the person's spouse.

Miss. Code Ann. § 97-3-65 (1)(b) (Rev. 2014).

[5] Section 97-3-95 of the Mississippi Code provides:

(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:

. . .

(d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.

Miss. Code Ann. § 97-3-95(1)(d) (Rev. 2014).

4

State alleged Giles and Delores met at the barn, he was at River Oaks Hospital in Flowood, Mississippi, because his son had just been born there. Giles admitted that Dolores had called him and had sent text messages to him, but he maintained that he had not answered her calls or texts. Giles testified that he never had met Dolores at D.J.'s home, and that he never had kissed Dolores or had sex with her. On cross-examination, Giles equivocated about his written statement to the police. He admitted that he had written the statement but denied that he had sex with Dolores at the barn. On redirect examination, Giles testified that the written statement was untrue.

¶10.    Giles's girlfriend, Vanethia Hall, testified that Giles had been with her at River Oaks Hospital in Flowood "the whole day" of June 6, 2012, because their son had been born at the hospital the previous day. Hall testified that her mother, Zanetha Collins, along with an aunt and cousin, also had been at the hospital and could verify Giles's presence. Giles's trial counsel, Curt Crowley, attempted to call Zanetha Collins to testify in support of the alibi defense. The trial court did not allow Collins to testify because Giles had not notified the State before the trial that he intended to call Collins as a witness. Although Giles did not proffer Collins's testimony, Crowley asserted outside the jury's presence that "she would testify substantially as Ms. Hall just testified."

¶11.    The jury found Giles guilty of statutory rape and sexual battery. Giles failed to perfect his appeal in a timely manner, but the trial court granted his motion for an out-of-time appeal.

**DISCUSSION**

I.    WHETHER GILES RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL.

5

¶12.	A defendant's right to the effective assistance of counsel in a criminal case is guaranteed by the United States and Mississippi Constitutions. U.S. Const. amend. VI; U.S. Const. amend. XIV; Miss. Const. art. 3, § 26; *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court articulated the test to be applied in considering a constitutional claim of ineffective assistance of counsel. Under *Strickland*, the court first must determine whether the defendant received reasonably effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. But, while reasonable tactical decisions should be given great deference, the word "strategy" is not an incantation that frees a decision of counsel from further scrutiny. *Richards v. Quarterman*, 566 F.3d 553, 566 (5th Cir. 2009). Rather, the decisions of counsel must be considered to determine whether the strategy was reasonable. *Id.*

¶13.	If the Court determines that the defendant did not receive reasonably effective assistance of counsel, it must then determine whether the deficiency had a "reasonable probability" of affecting the outcome of the case. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶14.	Generally, ineffective assistance claims are raised during post-conviction proceedings. *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008). However, a claim of ineffectiveness may be raised on direct appeal "if such issues are based on facts fully apparent from the record."

M.R.A.P. 22(b). This Court has held that, if the record cannot support an ineffective assistance of counsel claim on direct appeal, then the appropriate action is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. **Read v. State**, 430 So. 2d 832, 837 (Miss. 1983).

¶15.    In this direct appeal, Giles raises seven specific examples of his trial counsel's alleged ineffectiveness. With new appellate counsel, he argues that the following errors, considered cumulatively, prejudiced his defense at trial:

> 1. Trial counsel failed to request discovery in a timely manner.
>
> 2. Trial counsel failed to adequately investigate the case.
>
> 3. Trial counsel failed to properly reciprocate discovery and, accordingly, was barred from examining a crucial witness.
>
> 4. Trial counsel failed to call other witnesses who could have corroborated appellant's alibi.
>
> 5. Trial counsel failed to object to, move to strike, and to suppress highly prejudicial but irrelevant evidence.
>
> 6. Trial counsel failed to object to prosecutor's arguing facts not in the record.
>
> 7. Trial counsel failed to renew motion for directed verdict and failed to file for judgment notwithstanding the verdict or new trial.

> ### 1.    *Whether Giles's trial counsel was ineffective for failing to request discovery from the State in a timely manner.*

¶16.    Giles argues that his trial counsel was ineffective for failing timely to request discovery from the State. Giles's trial began on September 10, 2013. His trial counsel signed the discovery request on August 29, 2013, and it was filed by the clerk on September 3, 2013. The trial transcript reveals that trial counsel informed the court that he received discovery

7

from the State a week before the trial.

¶17.    In *Ivy v. State*, 589 So. 2d 1263 (Miss. 1991), this Court addressed an accused's claim that his attorney was ineffective for failing to file a request for discovery. *Id.* at 1265. The Court held that "[t]he filing of pre-trial motions is within the bounds of trial strategy" and that "the mere fact that an attorney did not file a motion for discovery is not sufficient to raise an ineffective assistance of counsel claim." *Id.* (internal citations omitted).

¶18.    Giles argues that trial counsel could not have conducted a thorough investigation due to the late receipt of discovery. However, this Court held in *Ivy* that counsel does not render deficient performance by failing entirely to file a request for discovery. Based on the authority of *Ivy*, we hold that waiting until a date close to trial to request discovery is not *per se* deficient performance. But, even assuming that Giles's trial counsel was deficient, Giles fails to explain how his defense was prejudiced by the timing of his counsel's discovery motion. At the time of trial, Giles was not surprised by any of the evidence adduced by the State that was included in the discovery. *See id.* ("The record further does not reflect any surprise to Ivy's counsel as a result of the state's case or its witnesses. Counsel was sufficiently familiar with the state's case and its witnesses that a discovery motion would not have elicited any change in the defense.").

### 2.    *Whether Giles's trial counsel was ineffective for failing to investigate the case.*

¶19.    Next, Giles argues that his counsel failed to conduct an adequate investigation into the facts and circumstances of the case. This Court has held that "at a minimum, counsel has a duty to interview potential witnesses and to make [an] *independent* investigation of the

8

facts and circumstances of the case." ***Ferguson v. State***, 507 So. 2d 94, 96 (Miss. 1987) (internal citations omitted) (emphasis in original). It is possible, though certainly not established, that Giles's counsel did not conduct an adequate investigation. Nothing in the record suggests that Giles's counsel failed to conduct an investigation into the facts and circumstances of the case. Even assuming that Giles's counsel conducted an insufficient investigation, nothing in the record informs us what information Giles's trial counsel could or should have discovered to prepare a better defense for Giles. Therefore, we dismiss this claim without prejudice to Giles's ability to raise it in a motion for post-conviction relief, should he pursue that course.

### 3.    *Whether Giles's trial counsel was ineffective in failing to reciprocate discovery.*

¶20.    Prior to trial, Giles's attorney did not disclose to the prosecution the names and addresses of the witnesses he intended to call to testify. *See* URCCC 9.04(C). Moreover, he did not give notice to the prosecution of his alibi defense pursuant to Uniform Rule of Circuit and County Court Practice 9.05. Rule 9.05 provides that, "[u]pon the written demand of the prosecuting attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such other time as the court may direct, upon the prosecuting attorney a written notice of the intention to offer a defense of alibi . . . ." The notice "shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon which the defendant intends to rely to establish such alibi." URCCC 9.05.

¶21.    The State argued that Vanethia Hall's testimony should be excluded because Giles had

9

failed to provide the prosecutor a written notice of his alibi defense. The trial court allowed Vanethia Hall to testify. The trial court ruled that, because the State had not complied with the Rule 9.05 requirement that it supply the defendant a written demand "stating the time, date, and place at which the alleged offense was committed," Giles's duty to provide the prosecutor a written notice of alibi defense had not been triggered.[6]

¶22.    However, the trial court ruled that Hall's mother, Zanetha Collins, would not be allowed to testify. The trial court's ruling seems to have rested on the fact that Giles had failed to disclose Collins as a witness as required by Rule 9.04(C). Giles's trial counsel did not make a proffer of Collins's testimony, but he represented verbally that Collins "would testify substantially as Ms. Hall just testified." Certainly, Giles's counsel was deficient in failing to notify the State about the witnesses he planned to call as required by Uniform Rule of County and Circuit Court Practice 9.04(C). But because Giles made no proffer of Collins's testimony, it is impossible for us to know, without engaging in wild speculation, whether this omission had any impact on the outcome of the trial. Therefore, we dismiss this claim without prejudice to Giles's ability to raise it in appropriate post-conviction proceedings.

---

[6] We note that the prosecutor informed the trial court that, in every case including Giles's case, the district attorney's office gives to defense counsel, along with its discovery packet, a form requesting the information required in the event of an alibi defense. Although the trial court ruled that the State's form request was insufficient to meet the State's burden under Rule 9.05, the fact that Giles's counsel failed to respond to the form request by serving written notice of his alibi defense is troubling. We further observe that, due to his untimely discovery request, Giles did not receive discovery until a week before trial, and he would have been unable to comply with the ten-day requirement for notice of an alibi defense. If trial counsel had complied with Rules 9.04(C) and 9.05, it is reasonably probable that the trial court would have allowed Zanetha Collins to testify. But, because trial counsel failed to proffer Collins's testimony, this Court cannot know whether the exclusion of her testimony prejudiced Giles.

### 4.    *Whether Giles's trial counsel was ineffective for failing to call other alibi witnesses.*

¶23.    Next, Giles argues that his trial counsel's performance was deficient with regard to identifying and calling additional alibi witnesses, specifically, the aunt and cousin who Hall testified had been present at the hospital with Giles. Because these persons were neither called to testify nor was their expected testimony proffered, this Court does not know what their testimony would have been. Therefore, we dismiss this claim so that Giles, if he so chooses, may raise it in a motion for post-conviction relief.

### 5.    *Whether trial counsel was ineffective for failing to move to suppress prejudicial evidence.*

¶24.    Giles argues that his counsel was deficient in failing to file a motion to suppress his statement to police under Rule 401 of the Mississippi Rules of Evidence. The trial court held a hearing on the voluntariness of the statement and on the question of whether the officers adequately had advised Giles of his *Miranda* rights. For the first time, Giles argues on appeal that the statement was irrelevant and that his trial counsel should have filed a motion to exclude the statement from evidence on that basis.

¶25.    "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Mississippi Rule of Evidence 401 favors the admission of evidence with any probative value at all. *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 947 (Miss. 2008) (citing *Holladay v. Holladay*, 776 So. 2d 662, 676 (Miss. 2000)). According to Giles, the statement is irrelevant because it does not

11

contain the name of the victim and is undated; so, it could have pertained to a sexual encounter with a different person.

¶26. It is true that Giles's statement did not include the name of the person whom he met behind D.J.'s barn and that he did not provide the date of the encounter. But this does not render the statement irrelevant for the purpose of Rule 401. At the time that Giles made the statement, he was under arrest for the statutory rape of Dolores. The investigators spoke with Giles in the Leake County Jail concerning the encounter between Dolores and Giles. Further, Giles's statement is consistent with Dolores's description of the encounter. Giles's written statement was significantly probative of his guilt, and it is highly unlikely that the trial court would have granted a motion to exclude the statement under Rule 401.[7] Trial counsel did not render deficient performance by failing to move to suppress the statement on Rule 401 grounds.

### 6. Whether trial counsel was ineffective for failing to object to the prosecutor's closing arguments.

¶27. Giles argues that trial counsel was ineffective for failing to object to certain statements made by the prosecutor during closing arguments. Giles contends that the prosecutor's description of a jury instruction was tantamount to a peremptory instruction to find him guilty. The prosecutor stated the following:

> I briefly want to go back over the jury instructions that we as the State have provided. S-1 is what we had to prove to prove statutory rape in this case. It

---

[7] Giles does not contend before this Court that his statement was made involuntarily or that it was the product of any inappropriate compulsion. Moreover, he does not claim that his state or federal constitutional rights were violated or compromised in the taking of this statement.

says that the Defendant did have sexual intercourse with [Dolores] at a time when she was under the age of 14 and he was over the age of 18 and more than 24 months older than her and not her spouse. That's it. That's all we had to prove: that they had sex and in this case she was 12, he was 19, and they weren't married. That's all we had to prove for statutory rape.

Giles contends that the prosecutor's statement that "Defendant did have sexual intercourse with [Dolores] . . ." instructed the jury that all the elements of statutory rape had been met. We disagree, because it is clear from the context of that statement that the prosecutor was reciting to the jury the crime elements the State was obliged to prove. Trial counsel did not perform deficiently by failing to object.

¶28. Giles also argues that the prosecutor assumed facts not in evidence when he stated "what we've established through the testimony of Mr. Giles is that he is a liar. At some point he lied because the story he told investigators that day is not the same one that he told y'all today." This Court has held that, during closing arguments, an attorney cannot "state facts which are not in evidence." *Flowers v. State*, 842 So. 2d 531, 554 (Miss. 2003). However, counsel "may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts." *Id.* (quoting *Bell v. State*, 725 So. 2d 836, 851 (Miss. 1998)). The prosecutor's argument was not improper because it drew from the conflict between Giles's custodial statement and his trial testimony an inference that Giles had lied. Because an evidentiary basis existed for the argument, Giles's counsel was not deficient for failing to object.

¶29. Giles also argues that his trial counsel should have objected to the prosecutor's argument that Giles, in his signed statement, had admitted having had sex with Dolores. He

contends that this argument introduced facts not in evidence because Giles's jailhouse statement did not name Dolores as the person with whom he had sex. But Investigator Henderson testified that, before Giles gave the statement, the investigators had informed him that Dolores was the victim of the crime under investigation. The prosecutor's argument was proper because it drew a reasonable inference from Giles's statement that he had admitted the crimes about which he was being questioned. Therefore, Giles's counsel was not deficient for failing to object to the argument.

### 7. *Whether trial counsel was ineffective for failing make various motions.*

¶30. On cross examination, Giles testified that he was prompted to give his written statement by the investigators' promise that he would be released if he did so. Giles argues that trial counsel was deficient for failing to renew the motion to suppress the statement after this testimony. During the suppression hearing, the two investigators who interviewed Giles testified that they had made no threats or promises to Giles during the interview. Giles did not testify during the suppression hearing.

¶31. This Court has held that:

> The general rule is that for a confession to be admissible it must have been given voluntarily, and not as the result of any promises, threats or other inducements. The burden is on the prosecution to prove beyond a reasonable doubt that the confession was voluntary. The "burden is met and a *prima facie* case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward."

*Chase v. State*, 645 So. 2d 829, 837-38 (Miss. 1994) (citations omitted). Certainly, Giles's trial counsel could have renewed the motion to suppress after Giles testified that the

14

confession was induced by a promise of release. But under the circumstances, the failure to renew the motion was not deficient performance. During his testimony, Giles equivocated about whether the statement was the truth or whether he had given it in response to promises by the investigators that he would be released. And both of the officers who were present already had testified that no promises were made. Under these circumstances, counsel reasonably could have believed that the motion would have had little chance of success. Trial counsel did not render deficient performance by failing to renew the motion to suppress.

¶32.    Giles also argues that trial counsel was deficient for failing to move for a judgment notwithstanding the verdict or a new trial. In fact, the trial attorney did not file any post-trial motions or request a peremptory instruction. In *Holland v. State*, 656 So. 2d 1192, 1198 (Miss. 1995), this Court found that an attorney's complete failure to make post-trial challenges to the weight or sufficiency of the evidence was deficient performance. In *Holland*, such failures were prejudicial to the defendant because the evidence was insufficient to support the guilty verdict and there was a reasonable probability that the trial judge would have granted a motion challenging the sufficiency of the evidence had one been made. *Id.* In *Parker v. State*, 30 So. 3d 1222, 1235 (Miss. 2010), Parker's attorney failed to challenge the weight of the evidence with a motion for a new trial. Citing *Holland*, the Court held that the failure was deficient performance, but it also found that Parker had failed to show how the deficiency had prejudiced him because no reasonable probability existed that the trial court would have granted the motion. *Id.*

¶33.    Under *Holland*, Giles's trial counsel rendered deficient performance by failing to

make any post-trial challenges to the weight or sufficiency of the evidence. Giles makes no argument that he was prejudiced by this deficiency. And this Court finds no prejudice. "[T]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Massey v. State*, 992 So. 2d 1161, 1164 (Miss. 2008). Dolores's testimony was corroborated by Giles's statement to the police. There is no reasonable probability that a trial court would have granted a motion for a directed verdict, a peremptory instruction, or a judgment notwithstanding the verdict. *See Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (in a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). And based on the same evidence, there is no reasonable probability that a trial court would have found that the evidence preponderated so heavily against the verdict that a new trial was required to avoid sanctioning an unconscionable injustice. *See Bush*, 895 So. 2d at 844 (quoting *Amiker v. Drugs for Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000)). Giles is entitled to no relief on this issue.

8. *Whether the totality of counsel's performance prejudiced Giles, entitling him to a new trial.*

¶34. Giles argues that counsel's errors, considered cumulatively, resulted in prejudice. This Court has found that several of Giles's ineffective assistance of counsel claims are not appropriate for determination on direct appeal. Therefore, the issue of prejudice from the

16

cumulative effect of counsel's performance is dismissed so that Giles will have the option of raising it in post-conviction proceedings.

II.     WHETHER THIS CASE MUST BE REVERSED BECAUSE THE PROSECUTOR STATED FACTS NOT IN THE RECORD DURING CLOSING ARGUMENT.

¶35.     Giles argues that the prosecutor's statements during closing argument discussed above constituted reversible error. Those statements do not constitute improper closing argument under the circumstances in which they were made. His reference to a jury instruction in the context of describing what the State had to prove did not peremptorily instruct the jury to find guilt. And the prosecutor did not argue facts outside the evidence, but instead properly drew inferences from the evidence that had been presented at trial. Therefore, this issue is without merit.

**CONCLUSION**

¶36.     Giles's claims of ineffective assistance of counsel for counsel's failure timely to request discovery, failure to move to suppress his police statement on the basis of irrelevance, failure to object during closing arguments, and failure to make various motions are without merit. And Giles's ineffective assistance claims based on failure to investigate, failure to reciprocate discovery, and failure to identify and call additional alibi witnesses, and the question of whether Giles was prejudiced by the totality of counsel's performance are not based on facts fully apparent from the record. These claims are dismissed and may be raised in appropriate post-conviction proceedings. We also hold that the prosecutor did not make improper closing arguments. Therefore, we affirm Giles's convictions and sentence.

17

¶37. **COUNT I: CONVICTION OF STATUTORY RAPE AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCE IN COUNT I SHALL RUN CONSECUTIVELY TO THE SENTENCE IN COUNT II, FOR A TOTAL OF THIRTY-FIVE (35) YEARS TO SERVE.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**