CHAMBERLIN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 65. Because I disagree with the majority's conclusion that "there is a reasonable probability that the trial court would have granted a motion for a new trial," I respectfully dissent. As Woods's conviction was not against the overwhelming weight of the evidence, his counsel's ineffective assistance did not prejudice him. The jury, after being properly instructed on the law-including Woods's defense of justifiable homicide and the application of the Castle-Doctrine presumption-weighed the evidence and found Woods guilty of murder.
 
 See
 

 Flynt v. State
 
 ,
 
 183 So.3d 1
 
 , 11-14 (Miss. 2015) (finding that the verdict was not against the overwhelming weight of the evidence despite the defendant's theory of self-defense and the application of the Castle Doctrine). While I agree that the failure to make any post-trial motions was ineffective assistance, I would not disturb Woods's conviction, as he cannot demonstrate prejudice.
 

 ¶ 66. In order to prevail on an ineffective-assistance claim, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 694,
 
 104 S.Ct. 2052
 
 , 2068,
 
 80 L.Ed. 2d 674
 
 (1984). In other words, Woods must show a reasonable probability that the trial court would have granted a motion for a new trial had one been made. Given the record before us, Woods cannot meet his burden of proof.
 
 See
 

 Id.
 

 at 693
 
 ,
 
 104 S.Ct. 2052
 
 (noting the "general requirement that the defendant affirmatively prove prejudice.").
 

 ¶ 67. "It is presumed that jurors follow the instructions of the court. To presume otherwise would be to render the jury system inoperable."
 
 Flynt v. State
 
 ,
 
 183 So.3d 1
 
 , 11 (Miss. 2015) (quoting
 
 Gray v. State
 
 ,
 
 728 So.2d 36
 
 , 63 (Miss.1998) ). "[F]actual disputes are properly resolved by a jury and do not mandate a new trial."
 
 Id.
 
 at 14 (quoting
 
 Beasley v. State
 
 ,
 
 136 So.3d 393
 
 , 403 (Miss. 2014) ). Further,
 

 On questions of witness testimony, this Court has held that "[t]he jury determines the weight and credibility to give witness testimony and other evidence."
 

 Moore v. State
 
 ,
 
 933 So.2d 910
 
 , 922 (Miss. 2006) (citing
 
 Johnson v. State
 
 ,
 
 904 So.2d 162
 
 , 167 (Miss. 2005) ). This Court "may not 'pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief.' "
 

 Id.
 

 (quoting
 
 Davis v. State
 
 ,
 
 568 So.2d 277
 
 , 281 (Miss. 1990) ).
 

 Id.
 

 (alteration in original) (
 
 Barfield v. State
 
 ,
 
 22 So.3d 1175
 
 , 1187-88 (Miss. 2009) ).
 

 ¶ 68. While I recognize that the ineffective assistance in this case leaves this Court without a ruling to review under an abuse-of-discretion standard,
 
 [2]
 
 as recognized by the majority, this is not an unfamiliar procedural posture for this Court.
 
 See
 

 Giles v. State
 
 ,
 
 187 So.3d 116
 
 , 125-26 (Miss. 2016) (affirming conviction despite no post-trial motions);
 
 Parker v. State
 
 ,
 
 30 So.3d 1222
 
 , 1234-35 (Miss. 2010) (same). Clearly, a remand is not automatic.
 

 ¶ 69. For a remand to be merited, "[t]he defendant must ... demonstrate a reasonable probability that the result of the trial would have been different but for counsel's deficiencies."
 
 Holland v. State
 
 ,
 
 656 So.2d 1192
 
 , 1198 (Miss. 1995). In
 
 Holland v. State
 
 , Holland admitted to simple possession but denied any intent to distribute.
 

 Id.
 

 at 1197
 
 . Defense counsel, however, failed to make a motion for directed verdict or enter any post-trial motions.
 

 Id.
 

 This "deprived the trial judge of the opportunity to review the evidence and reexamine possible errors at trial."
 

 Id.
 

 In light of Holland's defense strategy and his counsel's failure to have the trial judge examine the sufficiency of the evidence, the
 
 Holland
 
 Court detailed the prejudice:
 

 There was more than a reasonable probability in this instance.... [T]he evidence was insufficient as a matter of law to support the charge and there was a reasonable probability that the trial judge would have granted the renewed motion for a judgment notwithstanding the verdict or a peremptory instruction had he been afforded a second chance to review the evidence produced at trial. In addition, a reversal would have definitely followed if the error had been properly preserved for appeal.
 

 Id.
 

 at 1198
 
 .
 

 ¶ 70. In contrast, a remand is not appropriate where the defendant is not prejudiced by counsel's deficiency.
 
 Giles
 
 ,
 
 187 So.3d at 125-26
 
 . When the evidence is legally sufficient to support the verdict and the verdict is not against the overwhelming weight of the evidence, there is no reasonable probability that the outcome would have been different and the defendant is not entitled to a new trial.
 
 See
 

 Id.
 

 ¶ 71. Thus, the question before this Court is whether-with "the evidence ... weighed in the light most favorable to the verdict"-is this such an "exceptional case[ ] in which the evidence preponderates heavily against the verdict" that there is a reasonable probability that a trial court
 
 would
 
 have granted the motion?
 
 Bush v. State
 
 ,
 
 895 So.2d 836
 
 , 844 (Miss. 2005),
 
 overruled on other grounds by
 

 Little v. State
 
 ,
 
 233 So.3d 288
 
 , 291-93 (Miss. 2017). I would say no. As noted, this Court presumes that jurors follow the instructions provided to them.
 
 Flynt
 
 ,
 
 183 So.3d at 11
 
 . Woods in his appeal fails to offer any proof of prejudice that would foreclose this Court from relying on this bedrock principle. Here, the jury considered the evidence in the record, applied the governing law, and concluded that Woods murdered
 Pierre. Therefore, as long as the evidence in the record is legally sufficient to support the conviction and the conviction is not against the overwhelming weight of the evidence, there is no prejudice to Woods. This is the case here.
 

 ¶ 72. The State offered sufficient evidence to demonstrate that Woods killed Pierre with the intent necessary to commit second-degree murder without the authority of law and not in necessary self-defense.
 
 See
 

 Miss. Code Ann. § 97-3-19
 
 (1)(b) (Rev. 2014). The parties stipulated to the fact that the State Medical Examiner had determined that Pierre Tenner "died as a result of a gunshot wound, and the manner of death was homicide." Doris also testified that she came back out of her house after hearing the shot and saw Woods with a shotgun. Further, Paul Armstead maintained that he saw Woods retrieve the shotgun and saw Pierre fall to the ground after being shot. Woods also shot Pierre after having entered the house twice during the argument with the knowledge that Doris had contacted law enforcement multiple times. The evidence further demonstrated that Pierre was intoxicated during the argument, with a blood alcohol count of .24. While none of these facts barred Woods's Castle-Doctrine defense and self-defense theory, the facts in this record do support the jury's conclusion that the Castle Doctrine did not apply, that Woods did not act in self-defense and that Woods did in fact murder Pierre. After review of the record, I would find that the evidence was legally sufficient to support Woods's conviction.
 
 [3]
 

 ¶ 73. In light of this evidence, the verdict was not against the overwhelming weight of the evidence. Pierre was heavily intoxicated at the time and some distance from Woods when Woods shot him. Further, Woods had entered the house multiple times and voluntarily chose to come back outside during the encounter. Woods also knew that Doris had called law enforcement and had asked them to respond to Pierre. Moreover, Pierre
 
 was unarmed
 
 when Woods shot him and left him to die in the driveway.
 

 ¶ 74. Concerning the Castle Doctrine, the Majority assumes that Woods was entitled to the presumption.
 
 See
 
 Maj. Op. at ¶ 60. Under Mississippi law, though, whether Woods is entitled to the Castle-Doctrine presumption or not is a question to be resolved by a jury.
 
 Newell v. State
 
 ,
 
 49 So.3d 66
 
 , 73-78 (Miss. 2010). "In a homicide prosecution where the defendant asserts that the castle doctrine applies, and there are discrepancies in witness testimony, the issue is properly left to the jury."
 
 Bryant v. State
 
 ,
 
 232 So.3d 174
 
 , 179 (Miss. Ct. App. 2017),
 
 reh'g denied
 
 (Sept. 12, 2017) (citing
 
 Flynt
 
 ,
 
 183 So.3d at
 
 14 ). This principle was reflected in Jury Instruction D-19, which required the jury to determine that the necessary elements under Section 97-3-15(3) were satisfied by the evidence in the record before applying the presumption to Woods.
 

 ¶ 75. It is not a foregone conclusion that the circumstances described in Section 97-3-15(3) were supported by the evidence. "[T]he jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness."
 

 Meshell v. State
 
 ,
 
 506 So.2d 989
 
 , 992 (Miss. 1987) (citing
 
 Arteigapiloto v. State
 
 ,
 
 496 So.2d 681
 
 , 686 (Miss.1986) ).
 

 ¶ 76. Much of the evidence that the jury would have considered concerning the application of the presumption was testimony from Doris, a witness whose credibility was attacked a number of times at trial. During cross-examination, Doris admitted that her three written statements (two to law enforcement) each contradicted her testimony on direct examination. Also during cross-examination, Doris claimed that she had told Woods's defense attorney that Pierre had told Woods that he did not get him the other day but was going to get him this time. Doris conceded, though, that none of her prior written statements included Pierre's threat to Woods. From the record evidence, Doris recalls three different accounts of when and where she saw Pierre after he was shot. Further, her testimony and statements differ with one another over whether Woods followed her into the actual house or merely went into the attached laundry room.
 

 ¶ 77. Again, "the jury is ... is free to accept or reject all or some of the testimony given by each witness."
 
 Meshell
 
 ,
 
 506 So.2d at 992
 
 . At the end of Doris's cross-examination, the following exchange took place:
 

 Q. Which one of these stories are we supposed to believe, Ms. Tenner?
 

 A. The story I told.
 

 Q. Which time?
 

 A. Today.
 

 Q. So the one that you said on the day that it happened, the day that it happened, you want us to believe that what you're telling us today is the truth and that's not?
 

 A. Today is the truth.
 

 Of course, the jury was not under any requirement to believe that Doris had testified to the truth.
 

 ¶ 78. In fact, beyond the contradiction in Doris's own testimony and statements, the jury could also have chosen to find Paul Armstead's testimony more credible. Armstead testified that it did not seem odd for Pierre to be across the street that day. According to Armstead, he did not see Doris intervene between Woods and Pierre. He also maintained that he had not been at 14 Hampton Court that day with Woods-contrary to Doris's claim that Armstead had been drinking with Woods in the carport. Further, Armstead stated that he did not see Pierre with a gun, that Pierre did not act as if he had a gun and that Pierre did not lean into his truck before crossing the street toward Woods. The jury is the ultimate fact-finder and properly weighed the conflicting evidence and arrived at a verdict which the evidence supports.
 

 ¶ 79. Because there is not a reasonable probability that the trial court would have granted a motion for a new trial had one been made, I would affirm Woods's conviction. Sufficient evidence supports the verdict, and the verdict is not against the overwhelming weight of the evidence.
 

 See
 

 Beasley
 
 ,
 
 136 So.3d at 401
 
 ("The standard of review for a post-trial motion is abuse of discretion.").
 

 This case differs from
 
 Holland
 
 or
 
 Giles
 
 . Here, the trial court took the opportunity to test the sufficiency of the State's evidence. After the State rested, Woods's counsel moved for a directed verdict. Citing the Castle Doctrine, Woods's counsel argued, "[T]he State has the burden to prove that my client did not act in self defense, and the State has utterly failed to prove that my client did not have that reasonable fear." The trial court determined otherwise: "[T]he State has submitted sufficient evidence and testimony to join the issue of whether or not the defendant acted in self defense."