# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-01734-SCT

*CASEY SHELDON WOODS a/k/a CASEY WOODS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/28/2016 |
| TRIAL JUDGE: | HON. LILLIE BLACKMON SANDERS |
| TRIAL COURT ATTORNEYS: | RONNIE LEE HARPER |
| | TIM COTTON |
| | MICHAEL ZACHARY JEX |
| | CHRISTINA FERRELL DAUGHERTY |
| | RONNIE LEE HARPER |
| | PATRICIA F. DUNMORE |
| | EILEEN M. MAHER |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 03/01/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     On August 25, 2015, Casey Woods was indicted on one count of first degree murder, stemming from the shooting of his girlfriend's estranged husband.  Woods also was indicted on one count of possession of a firearm by a convicted felon.  The counts were severed and

the case proceeded to trial solely on the murder charge on September 22, 2016.

¶2. An Adams County jury found Woods guilty of second degree murder in violation of Mississippi Code Section 97-3-19(1)(b). The trial court sentenced Woods as a habitual offender under Mississippi Code Section 99-19-83 to life in prison without the possibility of parole. Woods's trial counsel did not file any post-trial motions. Woods appeals, arguing that (1) the evidence presented at trial was insufficient to overcome the presumption afforded by the Castle Doctrine that he acted reasonably when he killed Pierre Tenner, and (2) he received constitutionally ineffective assistance of counsel.

¶3. Woods waived his insufficient evidence argument; however, we reverse the judgment and remand for a new trial based on ineffective assistance of counsel with regard to Woods's trial counsel's failure to file a post trial motion for a new trial challenging the weight of the evidence.

## FACTUAL BACKGROUND

¶4. Doris Tenner and Pierre Tenner were married and lived at Fourteen Hampton Court in Natchez, Mississippi. Doris's and Pierre's marriage became volatile over time and eventually deteriorated. Some time after Doris and Pierre separated, Doris began dating Woods in April 2015.

¶5. On May 4, 2015, Pierre called Doris, but she did not answer the phone. Later, Pierre came home from work and saw Woods's truck parked in the yard. Angered, Pierre kicked in the locked door and went into the house with a twelve gauge shotgun. Pierre saw Doris with a man in the house. Doris retreated down the hallway and locked herself in a bedroom.

2

Pierre fired the shotgun through the door, hitting the wall and a television in the bedroom. Doris came out of the bedroom and she and Pierre tussled for the shotgun. Pierre claimed the shotgun went off while he and Doris were tussling for the shotgun. After tussling for a while, Pierre left the scene.

¶6.     After the incident, Doris called the police and filed charges. Pierre was arrested and charged with domestic violence. Pierre was released on bond subject to certain conditions set by the municipal court. The municipal court ordered Pierre to have no contact with Doris, including telephone contact and physical contact, either at Doris's residence, place of employment, or any other place. The municipal court also ordered that Doris "shall have the exclusive use and possession of the residence . . . to the exclusion of [Pierre]."

¶7.     Three weeks later, on the morning of May 24, 2015, Pierre called Doris. Doris could tell Pierre had been drinking. Pierre was at a nearby street, and Doris told Pierre not to come to her house. Doris left her house to get groceries. On her way home, Pierre called her again and they argued. Pierre told Doris that he was coming to her house, but Doris told him he did not need to be there. Doris arrived home and Woods was outside getting ready to wash his truck. While Doris was in the process of moving her vehicle so Woods could wash his truck, she saw Pierre's truck coming down the street.

¶8.     Doris went inside and called 911 at 12:15 p.m. Doris requested that the police patrol Hampton Court because her husband was prohibited from being there. Doris told dispatch that she recently had filed charges against her husband Pierre for shooting in her house. Doris also told dispatch that Pierre had been drinking.

3

¶9.     Pierre pulled up and parked at Willie Thomas's house across the street from Doris's house. Thomas and Paul Armstead, who lived next door to Thomas, were outside Thomas's house socializing. Pierre got out of his truck and began talking with Thomas and Armstead. Meanwhile, Woods was outside Doris's house getting ready to wash his truck.

¶10.    Armstead explained that Pierre was a friend and former neighbor before he and Doris had separated. Armstead did not believe it was odd for another man to be at Doris's house. Armstead also was a friend of Woods. After only a few minutes, Pierre and Woods began arguing from opposite sides of the street. Armstead testified that Woods was not enticing Pierre to say anything, but he could not say who started the argument. No evidence was presented as to the actual content of the argument.

¶11.    From inside, Doris heard Pierre and Woods arguing. Doris went outside and saw Pierre across the street and Woods in the yard by his truck. Doris told them to be quiet, and the argument subsided. Doris went back inside and again heard Woods and Pierre arguing. Doris called 911 at 12:20 p.m. Doris urged dispatch that the police needed to hurry to the scene.

¶12.    Doris went back outside and told the two men to be quiet, but they continued to argue. Doris told Woods that the police were coming. The argument escalated to the point that Pierre got frustrated and jumped out of his chair. Pierre took his leg brace off, threw it to the ground, and began to walk in the direction of Doris's house.

¶13.    Before crossing the street, Doris saw Pierre stop at his truck and roll the window down. Pierre put his hand in the truck. Pierre said to Woods, "I missed you the first time but

4

I won't miss you this time." Pierre then put his hand behind his back and proceeded to cross the street toward Doris's yard.

¶14. Armstead did not see Pierre stop at his truck or see whether he had a gun. Armstead testified that Pierre did not act like he had a gun. Armstead also testified that Pierre did not have a weapon of any sort. Armstead could tell that Pierre was angry and assumed he went across the street to fight Woods. Armstead heard Doris tell Pierre not to come over to her house.

¶15. Doris went to the edge of her yard to stop Pierre from coming over and began pushing him. Pierre grabbed Doris and threw her to the ground. Doris said she was going to call the police, to which Pierre responded, "Go ahead and call them." Doris went back inside to call the police. Doris provided a statement to the police saying that Woods had followed her in the house and had gotten the shotgun because Pierre was threatening Woods. Doris explained that there were two doors under the carport, a door to the laundry room and a separate door to go inside the house. Doris had clarified in another statement that when her first statement said Woods had followed her in the house, she meant that Woods had gone into the laundry room and she had gone inside the house.

¶16. While Pierre was approaching, Armstead saw Woods go inside the house or through a door under the carport, attached to the house. Woods came back out the door with a shotgun as Pierre was walking toward Doris's driveway. Doris did not know that there was a gun on her property, and she assumed Woods had gotten the shotgun from the laundry room.

5

¶17. Woods remained under the carport. Initially, Armstead testified that when Woods came out with the shotgun, Pierre was not advancing toward Woods, but "he was walking that way[.]" Armstead then testified that when Woods came out with the shotgun, Pierre was advancing toward Woods. Woods, who was standing under the carport, shot Pierre, who was halfway up the driveway, in the leg. Armstead testified that Pierre got no closer than halfway up the driveway before Woods shot him.

¶18. Doris heard a gunshot while she was in the house. She did not know if Woods had shot Pierre or Pierre had shot Woods. She went outside to find that Pierre had been shot and Woods was holding a shotgun. Pierre fell to the ground and Woods left the scene.

¶19. Doris called 911 a third time at 12:33 p.m. Doris frantically told police that there had been a shooting. She urged police and an ambulance to hurry to the scene. Doris explained that her husband had come across the street, pulled a gun on a "man" and the "man" had shot him. Doris repeatedly said that she had told Pierre not to come over there. When dispatch asked Doris to explain again exactly what had happened, she responded that Pierre had been across the street and she told had him not to come over to her house. Doris said Pierre came over and "fooled" with "this man" and the "man" shot him. Doris said the "man" left, and her husband was lying wounded in the yard.

¶20. Armstead and another neighbor put Pierre in the back of a truck and took him to the hospital, where he was pronounced dead on arrival. At trial, the parties stipulated that Pierre died as a result of the gunshot wound to his right thigh and that the manner of death was homicide. Pierre's blood alcohol content was .242, showing that he was heavily intoxicated

at the time of the shooting.

¶21. Police responded to the scene and found no weapons at the residence. Investigator Joe Belling of the Natchez Police Department testified that the closest blood spot to the carport was found on the driveway just over seven and a half feet from the brick support of the carport. Belling did not know whether the blood was Pierre's. Belling repeatedly testified that he did not know where Pierre had been located when he was shot, however, Belling testified that it appeared he was shot somewhere around the carport.

¶22. The trial court instructed the jury on first degree murder, second degree murder, and heat of passion manslaughter. The court also instructed the jury on self defense and the Castle Doctrine. The jury found Woods guilty of second degree murder. On September 28, 2016, the circuit court sentenced Woods as a habitual offender to life without the possibility of parole. Woods's trial counsel failed to file any post-trial motions. Woods was appointed appellate counsel, who proceeded with the instant appeal.

## DISCUSSION

### I. Sufficiency of the Evidence

¶23. At trial, Woods's defense theory was justifiable homicide, specifically, self defense and the statutory protections of the Castle Doctrine. The trial court instructed the jury on justifiable homicide under Section 97-3-15(e)-(f) and the specific provisions of the Castle Doctrine, codified at Mississippi Code Section 97-3-15(3)-(4). *See* Miss. Code Ann. § 97-3-15 (Rev. 2014). The Castle Doctrine creates a presumption of fear and abridges a duty to retreat in certain prescribed circumstances. *Newell v. State*, 49 So. 3d 66, 74 (¶ 22) (Miss.

7

2010). Woods argues that the State presented insufficient evidence to overcome the presumption that he reasonably had feared imminent death or great bodily harm when he shot and killed Pierre.

¶24. "A directed verdict, judgment notwithstanding a verdict and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial." *Easter v. State*, 878 So. 2d 10, 21 (¶ 36) (Miss. 2004). "To preserve the issue of denial of a directed verdict, the defense must move for directed verdict at the close of the State's case-in-chief." *Page v. State*, 990 So. 2d 760, 762 (¶ 9) (Miss. 2008). "When the defendant proceeds with his case after the state rests and the court overrules the defendant's motion for a directed verdict, the defendant has waived the appeal of that directed verdict." *Holland v. State*, 656 So. 2d 1192, 1197 (Miss. 1995). Stated another way, "[i]f a defendant puts on evidence in his own defense after the denial of his motion for directed verdict, he waives his challenge to the sufficiency of the State's evidence up to that point." *Robinson v. State*, 749 So. 2d 1054, 1058–59 (Miss. 1999).

¶25. At the close of the State's case-in-chief, Woods moved for a directed verdict, challenging the sufficiency of the evidence presented in the State's case-in-chief. The trial court denied the motion, and Woods proceeded with his case-in-chief, in which he called witnesses and introduced evidence. Consequently, Woods waived his challenge to the sufficiency of the State's evidence presented during its case-in-chief. *See id*.

¶26. "If a motion for directed verdict is denied and the defendant introduces evidence on his own behalf, the defendant must renew his motion for directed verdict at the close of all

8

evidence." *Page*, 990 So. 2d at 762 (¶ 9). "In the absence of a renewal of the directed verdict, a request for a peremptory instruction, or a motion for a judgment notwithstanding the verdict, [a defendant] has waived the sufficiency error on appeal." *Holland*, 656 So. 2d at 1197.

¶27. At the close of all evidence, Woods did not renew his motion for a directed verdict, request a peremptory instruction, or file a post-trial motion for a judgment notwithstanding the verdict (JNOV). Therefore, Woods's challenge to the sufficiency of the evidence on appeal is waived. *See Wright v. State*, 540 So. 2d 1, 3-4 (Miss. 1989). Because Woods did not preserve his sufficiency of the evidence argument, the assignment of error lacks merit.

## II. Ineffective Assistance of Counsel

¶28. However, Woods also contends that his trial counsel was constitutionally ineffective because trial counsel (1) failed to request lesser included manslaughter jury instructions; and (2) failed to file any post-trial motion on his behalf. We address only Woods's trial counsel's failure to file any post-trial motion, as the claim is dispositive.

¶29. "A defendant's right to the effective assistance of counsel in a criminal case is guaranteed by the United States and Mississippi Constitutions." *Giles v. State*, 187 So. 3d 116, 120 (¶ 12) (Miss. 2016) (citing U.S. Const. amends. VI, XIV; Miss. Const. art. 3, § 26). The United States Supreme Court articulated the two pronged test to be applied when considering a constitutional claim of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To demonstrate an ineffective assistance of counsel claim, a defendant must prove his counsel's performance was deficient, and that the

9

deficiency was so substantial as to deprive the defendant of a fair trial. *Dartez v. State*, 177 So. 3d 420, 423 (¶ 19) (Miss. 2015) (applying *Strickland*, 466 U.S. at 687-96).

¶30. "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and that the challenged action might be considered sound trial strategy." *Giles*, 187 So. 3d at 120 (¶ 12) (citing *Strickland*, 466 U.S. at 687-88). The Court considers "the totality of the circumstances to determine whether counsel's efforts were both deficient and prejudicial." *Dartez*, 177 So. 3d at 423 (¶ 19). "The burden is on the [defendant] to rebut the presumption by showing that counsel's performance did not meet the *Strickland* standard." *Wilson v. State*, 194 So. 3d 855, 862 (¶ 19) (Miss. 2016). "If the Court determines that the defendant did not receive reasonably effective assistance of counsel, it must then determine whether the deficiency had a 'reasonable probability' of affecting the outcome of the case." *Giles*, 187 So. 3d at 120-21 (¶ 13) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

¶31. Generally, ineffective assistance claims are raised during post-conviction proceedings; however, a claim may be raised on direct appeal if such issues are based on facts fully apparent from the record. *Giles*, 187 So. 3d at 121 (¶ 14). If the record cannot support an ineffective assistance of counsel claim on direct appeal, then the appropriate action is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. *Id*. Whether a defendant has received ineffective assistance of counsel is a question of law reviewed de novo. *Wilson*, 194 So. 3d at 862 (¶ 19).

### A.    Jury Instructions

¶32.    Woods claims that his counsel provided ineffective assistance by not requesting culpable negligence manslaughter and imperfect-self-defense manslaughter jury instructions. Woods claims that the inaction deprived him of the right to have the jury fully instructed on manslaughter theories, which were supported by evidence at trial.

¶33.    "When claiming ineffective assistance of trial counsel because of jury instructions, it is the duty of the appellant to demonstrate both error in failing to receive the instruction and the prejudice to the defense." *Havard v. State*, 928 So. 2d 771, 789 (¶ 28) (Miss. 2006).

¶34.    In *Smiley v. State*, 815 So. 2d 1140, 1148 (¶¶ 30-33) (Miss. 2002), the Court held that trial counsel's decision not to request a jury instruction regarding the defendant's right not to testify did not amount to ineffective assistance. The Court said it was "conceivable that [trial counsel] withdrew the jury instruction as part of his trial strategy in the hope of not highlighting [the defendant's] decision not to testify." *Id*. at 1148 (¶ 33). The Court noted that whatever reason trial counsel had for withdrawing the instruction, there is a presumption that decisions made are strategic. *Id.* The Court concluded that the defendant's claim was without merit because he failed to show that trial counsel "was deficient, much less that [trial counsel's] decision deprived him of a fair trial, which, but for the withdrawal of the jury instruction, would have likely resulted in a different outcome." *Id*.

¶35.    The Court has held that "trial counsel's decision to not request a jury instruction falls under the category of trial tactics, which are not subject to review." *Neal v. State*, 15 So. 3d 388, 406 (¶ 43) (Miss. 2009) (holding trial counsel's decision not to request the lesser offense

manslaughter and mutilation jury instructions did not constitute ineffective of assistance of counsel); *see also* **Sea v. State**, 49 So. 3d 614, 619 (¶ 22) (Miss. 2010) (same).

### 1. Culpable Negligence Manslaughter

¶36.   Woods maintains that the facts of the case are "close, and there can be no strategic advantage from not requesting the manslaughter instruction, especially in light of the fact that the [trial c]ourt granted the State's heat of passion manslaughter instruction without objection from Woods's trial counsel."

¶37.   Manslaughter is described as follows: "every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter." Miss. Code Ann. § 97-3-47 (Rev. 2014). Culpable negligence has been defined as negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life. **Hawkins v. State**, 101 So. 3d 638, 643 (¶ 17) (Miss. 2012). Second degree murder, murder, and culpable negligence manslaughter are distinguishable simply by degree of mental state of culpability. *Id*. In short, second degree murder involves a higher degree of recklessness from which malice may be implied. *Id*. "Culpable-negligence instructions are most commonly found in DUI and other automobile cases, which address negligent or grossly negligent conduct." **Swanagan v. State**, 2017 WL 2181149, at *8 (¶ 41) (Miss. May 18, 2017).

¶38.   Woods argues the failure to request the instruction on a lesser included offense theory "that coincided with [his] defense at trial was constitutionally defective, and it could have changed the outcome of [the] trial." However, a culpable negligence manslaughter theory

did not coincide with his defense at trial. Woods's defense theory at trial was not negligence; rather Woods contended the shooting constituted a justifiable homicide, more narrowly, self defense and the Castle Doctrine. The State never claimed Woods acted negligently. At best, the State claimed Woods committed heat of passion manslaughter, which is defined as:

> A state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Bowser v. State*, 182 So. 3d 425, 432 (Miss. 2015).

¶39. "A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury's finding on that theory." *Thomas v. State*, 48 So. 3d 460, 469 (¶ 23) (Miss. 2010). "To be entitled to a lesser-included-offense instruction, a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Gilmore v. State*, 119 So. 3d 278, 286 (Miss. 2013).

¶40. We hold that trial counsel's decision was not deficient because it is conceivable that Woods's trial counsel did not request a culpable negligence manslaughter instruction as part of his and her strategy. *See Smiley*, 815 So. 2d at 1148 (¶¶ 30-33).

¶41. Moreover, Woods does not point to any evidence in the record from which a jury reasonably could find him not guilty of murder and at the same time find him guilty of culpable negligence manslaughter. Indeed, no suggestion was made by either party at trial that Woods negligently had shot Pierre. Although the jury was instructed on heat of passion

13

manslaughter, the jury chose to find Woods guilty of second degree murder. Trial counsel's decision not to request a culpable negligence manslaughter instruction did not prejudice Woods's defense because the evidence did not support a jury's finding on the theory, and the jury rejected a heat of passion manslaughter theory based on the evidence presented. The issue is without merit.

## 2. Imperfect Self Defense

¶42. Woods argues that there was "ample evidence" for imperfect self defense manslaughter, which would have allowed the jury to find him guilty of manslaughter. "[U]nder the theory of imperfect self-defense, an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." *Brown v. State*, 222 So. 3d 302, 307 (Miss. 2017).

¶43. Unlike Woods's failure to point to any evidence which would have supported a culpable negligence manslaughter instruction, Woods references the following evidence that would have supported an imperfect-self-defense manslaughter instruction: Woods asserted self-defense as his defense at trial; Doris testified that she saw Pierre get something out of his truck that she believed was a gun; Woods knew of Pierre's history of violence with Doris; Doris called 911 twice for help before the shooting; and an argument immediately preceded Pierre's unlawful entrance onto the property. Woods also points out that no gun was found on Pierre after the shooting, indicating that Woods had a bona fide but unfounded belief that it was necessary to prevent death or great bodily harm.

14

¶44. While the evidence may have supported an imperfect self defense instruction, it is not apparent from the record that trial counsel's decision not to request the instruction constituted ineffective assistance of counsel. Certainly, it is conceivable that trial counsel decided to rely solely on the defense of justifiable homicide by way of true self defense and the Castle Doctrine. Trial counsel's strategy very well could have been not to request an imperfect self defense instruction in the hope of an acquittal rather than having the jury settle on the lesser included offense of imperfect self defense.

¶45. It is uncertain whether Woods's trial counsel even considered an imperfect self defense theory, or what his and her reasons were for not requesting an instruction on the theory. Generally, we would deny Woods's claim without prejudice so that it might be pursued in post-conviction proceedings. *See Ambrose v. State*, 133 So. 3d 786, 794 (Miss. 2013) (foregoing consideration of a claim for ineffective assistance of counsel on direct appeal where it was unclear whether the defendant's counsel considered an imperfect self defense theory or his reasons for not requesting an instruction on the theory). However, we proceed to address Woods's additional ineffective assistance claim on direct appeal based on the failure to file a post-trial motion for a new trial, because the record supports an ineffective assistance claim based on facts fully apparent from the record. *See Giles*, 187 So. 3d at 121 (¶ 14).

### B. Post-trial Motion for a New Trial

¶46. Woods argues his trial counsel's failure to file a post-trial motion for a new trial waived his right to argue on appeal that the verdict is against the overwhelming weight of the

15

evidence. Woods contends that, by not filing a motion for a new trial, counsel deprived him of having the trial court, and ultimately the appellate court, consider the weight of the evidence and order a new trial. Woods relies on *Giles v. State*, 187 So. 3d 116 (Miss. 2016), and *Holland v. State*, 656 So. 2d 1192 (Miss. 1995), in support of his argument.

¶47. In *Holland*, the Court held that an attorney's complete failure to make post-trial challenges to the weight or sufficiency of the evidence constituted deficient performance. *Holland*, 656 So. 2d at 1198. The Court held the failure was prejudicial to the defendant because the evidence was insufficient to support the guilty verdict and a reasonable probability existed that the trial court would have granted the motion challenging the sufficiency of the evidence, had one been made. *Id*.

¶48. In *Giles*, the Court held that the defendant's counsel rendered deficient performance by failing to make any post-trial challenges to the weight or sufficiency of the evidence. *Giles*, 187 So. 3d at 125 (¶ 33) (citing *Holland*, 656 So. 2d 1192). However, Defendant Patrick Giles made no argument that he was prejudiced by his counsel's deficiency. *Id*. The Court was unable to find prejudice. *Id*. The Court held that there was no reasonable probability that a trial court would have granted a motion for a directed verdict, a peremptory instruction, or a judgment notwithstanding the verdict. *Id*. at 126 (¶ 33). Moreover, the Court held that there was no reasonable probability that a trial court would have found that the evidence preponderated so heavily against the verdict that a new trial was required to avoid sanctioning an unconscionable injustice. *Id*.

¶49. Likewise, in *Parker v. State*, 30 So. 3d 1222, 1235 (Miss. 2010), the defendant's

counsel failed to challenge the weight of the evidence with a motion for a new trial. The Court held that the failure was deficient performance, but that the defendant failed to show how the deficiency had prejudiced him because there was no reasonable probability that the trial court would have granted the motion. *Id*.

¶50. No strategic reason exists for Woods's trial counsel's not filing a motion for a new trial, arguing that the verdict was contrary to the overwhelming weight of the evidence. Under the Court's holdings in *Holland*, *Giles*, and *Parker*, we hold Woods's failure to file any post-trial motion, namely, a motion for a new trial, constituted deficient performance. Having determined that the failure to file a motion for a new trial constitutes deficient performance, the Court must consider whether a reasonable probability exists that the trial court would have granted the motion.

¶51. "A motion for a new trial challenges the weight of the evidence." *Flynt v. State*, 183 So. 3d 1, 10 (¶ 30) (Miss. 2015). In *Bush v. State*, 895 So. 2d 836, 844 (¶ 18) (Miss. 2005), the Court summarized the role of the trial court in reviewing a motion for a new trial:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial, the [trial] court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the [trial] court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. *Amiker v. Drugs For Less, Inc*., 796 So. 2d 942, 947 (Miss. 2000). However, the evidence should be weighed in the light most favorable to the verdict. *Herring*, 691 So. 2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." *McQueen v. State*, 423

17

So. 2d 800, 803 (Miss. 1982).  Rather, as the "thirteenth juror," the [trial] court simply disagrees with the jury's resolution of the conflicting testimony.  *Id*. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves.  *Id*.  Instead, the proper remedy is to grant a new trial.

*Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005).

¶52.    Woods was convicted of second degree murder in violation of Section 97-3-19(1)(b),

which provides:

>    (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
>    . . .

>>    (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be second-degree murder;

Miss. Code Ann. § 97-3-19(1)(b) (Rev. 2014).

¶53.    Woods raised the justifiable homicide statute in his defense at trial.  Mississippi Code

Section 97-3-15(1)(e)-(f) provides:

>    (1) The killing of a human being by the act, procurement or omission of another shall be justifiable in the following cases:

>    . . .

>>    (e) When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling, in any occupied vehicle, in any place of business, in any place of employment or in the immediate premises thereof in which such person shall be;

>>    (f) When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some

18

great personal injury, and there shall be imminent danger of such design being accomplished;

Miss. Code Ann. § 97-3-15(1)(e)-(f) (Rev. 2014).

¶54. The jury was instructed on justifiable homicide. *See* Miss. Code Ann. § 97-3-15 (Rev. 2014). The jury also was instructed on the Castle Doctrine. The Castle Doctrine, codified at Section 97-3-15(3)-(4), curtails the duty to retreat and creates a presumption that the defendant reasonably feared imminent death, great bodily harm, or the commission of a felony upon him from a person who has unlawfully and forcibly entered the immediate premises of a dwelling. *Newell*, 49 So. 3d at 74 (¶ 22) (citing Miss. Code Ann. § 97-3-15(3)-(4)). The Castle Doctrine includes two prongs:

> First, under subsection (4), if the defendant is in a place where he had a right to be, is not the immediate provoker and aggressor, and is not engaged in unlawful activity, he has no duty to retreat before using defensive force. Miss. Code Ann. § 97-3-15(4) (Rev. 2006). And second, if the jury finds that any of the circumstances in subsection (3) are satisfied, the defendant who uses such defensive force is presumed to have reasonably feared imminent death or great bodily harm or the commission of a felony upon him. Miss. Code Ann. § 97-3-15(3) (Rev. 2006).

*Newell*, 49 So. 3d at 74 (¶ 22) (citing Miss. Code Ann. § 97-3-15).

¶55. "The circumstances in subsection (3) are that the person against whom the defensive force was used (1) had unlawfully and forcibly entered 'a dwelling, occupied vehicle, business, place of employment or the immediate premises thereof' or (2) had unlawfully removed another person 'against the other person's will from that dwelling, occupied vehicle, business, place of employment or the immediate premises thereof'—or he or she was in the process of doing one of the enumerated things." *Flynt v. State*, 183 So. 3d 1, 13 (¶ 37)

19

(Miss. 2015) (quoting Miss. Code Ann. § 97–3–15(3) (Rev. 2014)).

¶56.    In a criminal case, the burden of proof remains always with the prosecution on each element of the offense. *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991). "The defendant is not required to prove he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, he must be acquitted." *Ambrose v. State*, 133 So. 3d 786, 791 (Miss. 2013) (citing *Heidel*, 587 So. 2d at 843). Thus, the State had the burden of disproving justifiable homicide, *i.e.*, self defense and the elements of the Castle Doctrine.

¶57.    Woods argues the evidence presented at trial weighed heavily in his favor and supported his defense of justifiable homicide. Specifically, the evidence showed that Doris informed Woods about the domestic violence incident, in which Pierre had kicked in the door and had fired a shotgun inside her house, just three weeks prior to the day of the subject shooting. After Doris informed Woods about the incident, Woods asked if she had called the police. On the day of the shooting, Woods was a guest of Doris at her home. Evidence showed that Woods was the aggressor, as Pierre came across the street onto Doris's property toward Woods. An eyewitness confirmed that Woods was not enticing Pierre, and it was not unusual for Woods to be at Doris's house.

¶58.    Pierre was warned several times not to come to Doris's residence. Undeterred, Pierre continued to violate the conditions of his bond. Pierre, who was heavily intoxicated, took off his leg brace to fight Woods, crossed the street, and threw Doris down to the ground at the edge of her yard and advanced toward Woods. Evidence showed that Doris saw Pierre retrieve what she believed to be a gun before crossing the street. Doris testified that Pierre

20

told Woods that "I missed you the first time but I won't miss you this time." Woods retrieved a shotgun but remained under the carport of Doris's home, where he had a right to be, as Pierre approached. Woods shot Pierre in the leg as he approached him. Doris said in the last 911 call that Pierre had pulled a gun, and Woods had shot him. Doris testified that Woods was defending himself.

¶59. Had the trial court been presented with a motion for a new trial, it would have evaluated the evidence and the applicability of the Castle Doctrine. Based on the evidence presented at trial, a reasonable probability exists that the trial court would have found that the overwhelming weight of the evidence showed that Woods was in a place where he had a right to be; Pierre was the immediate provoker and aggressor; and Woods was not engaged in unlawful activity. As a result, Woods had no duty to retreat under the Castle Doctrine. *See* Miss. Code Ann. § 97-3-15(4) (Rev. 2014). Moreover, the Castle Doctrine forecloses the jury from considering Woods's lack of retreat as evidence that Woods's use of force was unnecessary, excessive, or unreasonable. *See **id***.

¶60. The Castle Doctrine also afforded Woods a presumption that he reasonably feared imminent death or great bodily harm or the commission of a felony upon him because evidence showed that Pierre had "unlawfully and forcibly entered a dwelling . . . or the immediate premises thereof." Miss. Code Ann. § 97-3-15(3).[1] Given no duty to retreat, the

---

[1] Mississippi Code Section 97-3-15(3) provides, in part: "This presumption shall not apply if the person against whom defensive force was used has a right to be in or is a *lawful resident or owner of the dwelling*, vehicle, business, place of employment or the immediate premises thereof or is the lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or if the *person who uses defensive force is engaged in unlawful activity*." Miss. Code Ann. § 97-3-15(3) (emphasis added). The

foreclosure of the fact finder from considering the lack of a retreat as evidence that Woods's use of force was unnecessary, excessive, or unreasonable, as well as the presumption afforded by the Castle Doctrine, a reasonable probability exists that the trial court would have found that the verdict was contrary to the overwhelming weight of the evidence.

¶61. "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 693 ("We believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."). In light of the aforementioned evidence preponderating against the verdict, a reasonable probability exists that the trial court would have granted a new trial. *See Holland*, 656 So. 2d at 1198. We can say with confidence that the probability is sufficient to undermine confidence in the outcome. *See Giles*, 187 So. 3d at 120-21 (¶ 13) (citing *Strickland*, 466 U.S. at 694).

¶62. To be clear, we do not hold that the verdict was against the overwhelming weight of the evidence; rather, we hold that a reasonable probability exists that the trial court would have granted a motion for a new trial, finding that the evidence preponderated so heavily against the verdict that a new trial was required to avoid sanctioning an unconscionable injustice. Accordingly, we reverse and remand for a new trial.

---

parties do not brief the issue of whether the presumption should not apply because Pierre may have been an "owner of the dwelling." While evidence showed that Pierre once had resided at Fourteen Hampton Court, the evidence does not show whether he was an "owner of the dwelling" at the time of the shooting. Moreover, no evidence was presented at trial showing that Woods's possession of the shotgun constituted "unlawful activity."

CONCLUSION

¶63. Woods's argument that insufficient evidence supported the verdict was waived and is not properly before the Court. However, we reverse the judgment and remand the case to the Circuit Court of Adams County for a new trial due to ineffective assistance of counsel for the failure to file a motion for a new trial based on the evidence presented. A reasonable probability exists that the trial court would have granted a motion for a new trial had it been given the opportunity.

¶64. **REVERSED AND REMANDED.**

**WALLER, C.J., KITCHENS, P.J., KING AND ISHEE, JJ., CONCUR. CHAMBERLIN, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., MAXWELL AND BEAM, JJ.**

**CHAMBERLIN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶65. Because I disagree with the majority's conclusion that "there is a reasonable probability that the trial court would have granted a motion for a new trial," I respectfully dissent. As Woods's conviction was not against the overwhelming weight of the evidence, his counsel's ineffective assistance did not prejudice him. The jury, after being properly instructed on the law—including Woods's defense of justifiable homicide and the application of the Castle-Doctrine presumption—weighed the evidence and found Woods guilty of murder. *See Flynt v. State*, 183 So. 3d 1, 11–14 (Miss. 2015) (finding that the verdict was not against the overwhelming weight of the evidence despite the defendant's theory of self-defense and the application of the Castle Doctrine). While I agree that the failure to make

23

any post-trial motions was ineffective assistance, I would not disturb Woods's conviction, as he cannot demonstrate prejudice.

¶66.   In order to prevail on an ineffective-assistance claim, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Strickland v. Washington***, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). In other words, Woods must show a reasonable probability that the trial court would have granted a motion for a new trial had one been made. Given the record before us, Woods cannot meet his burden of proof. *See **id***. at 693 (noting the "general requirement that the defendant affirmatively prove prejudice.").

¶67.   "It is presumed that jurors follow the instructions of the court. To presume otherwise would be to render the jury system inoperable." ***Flynt v. State***, 183 So. 3d 1, 11 (Miss. 2015) (quoting ***Gray v. State***, 728 So. 2d 36, 63 (Miss.1998)). "[F]actual disputes are properly resolved by a jury and do not mandate a new trial." *Id*. at 14 (quoting ***Beasley v. State***, 136 So. 3d 393, 403 (Miss. 2014)). Further,

> On questions of witness testimony, this Court has held that "[t]he jury determines the weight and credibility to give witness testimony and other evidence." ***Moore v. State***, 933 So. 2d 910, 922 (Miss. 2006) (citing ***Johnson v. State***, 904 So. 2d 162, 167 (Miss. 2005)). This Court "may not 'pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief.'" *Id*. (quoting ***Davis v. State***, 568 So. 2d 277, 281 (Miss. 1990)).

*Id*. (alteration in original) (***Barfield v. State***, 22 So. 3d 1175, 1187–88 (Miss. 2009)).

¶68.   While I recognize that the ineffective assistance in this case leaves this Court without

24

a ruling to review under an abuse-of-discretion standard,[2] as recognized by the majority, this is not an unfamiliar procedural posture for this Court. *See Giles v. State*, 187 So. 3d 116, 125–26 (Miss. 2016) (affirming conviction despite no post-trial motions); *Parker v. State*, 30 So. 3d 1222, 1234–35 (Miss. 2010) (same). Clearly, a remand is not automatic.

¶69. For a remand to be merited, "[t]he defendant must . . . demonstrate a reasonable probability that the result of the trial would have been different but for counsel's deficiencies." *Holland v. State*, 656 So. 2d 1192, 1198 (Miss. 1995). In *Holland v. State*, Holland admitted to simple possession but denied any intent to distribute. *Id*. at 1197. Defense counsel, however, failed to make a motion for directed verdict or enter any post-trial motions. *Id*. This "deprived the trial judge of the opportunity to review the evidence and reexamine possible errors at trial." *Id*. In light of Holland's defense strategy and his counsel's failure to have the trial judge examine the sufficiency of the evidence, the *Holland* Court detailed the prejudice:

> There was more than a reasonable probability in this instance. . . . [T]he evidence was insufficient as a matter of law to support the charge and there was a reasonable probability that the trial judge would have granted the renewed motion for a judgment notwithstanding the verdict or a peremptory instruction had he been afforded a second chance to review the evidence produced at trial. In addition, a reversal would have definitely followed if the error had been properly preserved for appeal.

*Id*. at 1198.

¶70. In contrast, a remand is not appropriate where the defendant is not prejudiced by

---

[2]*See Beasley*, 136 So. 3d at 401 ("The standard of review for a post-trial motion is abuse of discretion.").

counsel's deficiency. *Giles*, 187 So. 3d at 125–26. When the evidence is legally sufficient to support the verdict and the verdict is not against the overwhelming weight of the evidence, there is no reasonable probability that the outcome would have been different and the defendant is not entitled to a new trial. *See Id*.

¶71. Thus, the question before this Court is whether—with "the evidence . . . weighed in the light most favorable to the verdict"—is this such an "exceptional case[] in which the evidence preponderates heavily against the verdict" that there is a reasonable probability that a trial court *would* have granted the motion? *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005), *overruled on other grounds by Little v. State*, 2017 WL 4546740, at *3–4 (Miss. Oct. 12, 2017). I would say no. As noted, this Court presumes that jurors follow the instructions provided to them. *Flynt*, 183 So. 3d at 11. Woods in his appeal fails to offer any proof of prejudice that would foreclose this Court from relying on this bedrock principle. Here, the jury considered the evidence in the record, applied the governing law, and concluded that Woods murdered Pierre. Therefore, as long as the evidence in the record is legally sufficient to support the conviction and the conviction is not against the overwhelming weight of the evidence, there is no prejudice to Woods. This is the case here.

¶72. The State offered sufficient evidence to demonstrate that Woods killed Pierre with the intent necessary to commit second-degree murder without the authority of law and not in necessary self-defense. *See* Miss. Code Ann. § 97-3-19(1)(b) (Rev. 2014). The parties stipulated to the fact that the State Medical Examiner had determined that Pierre Tenner "died as a result of a gunshot wound, and the manner of death was homicide." Doris also

26

testified that she came back out of her house after hearing the shot and saw Woods with a shotgun. Further, Paul Armstead maintained that he saw Woods retrieve the shotgun and saw Pierre fall to the ground after being shot. Woods also shot Pierre after having entered the house twice during the argument with the knowledge that Doris had contacted law enforcement multiple times. The evidence further demonstrated that Pierre was intoxicated during the argument, with a blood alcohol count of .24. While none of these facts barred Woods's Castle-Doctrine defense and self-defense theory, the facts in this record do support the jury's conclusion that the Castle Doctrine did not apply, that Woods did not act in self-defense and that Woods did in fact murder Pierre. After review of the record, I would find that the evidence was legally sufficient to support Woods's conviction.[3]

¶73. In light of this evidence, the verdict was not against the overwhelming weight of the evidence. Pierre was heavily intoxicated at the time and some distance from Woods when Woods shot him. Further, Woods had entered the house multiple times and voluntarily chose to come back outside during the encounter. Woods also knew that Doris had called law enforcement and had asked them to respond to Pierre. Moreover, Pierre *was unarmed* when Woods shot him and left him to die in the driveway.

¶74. Concerning the Castle Doctrine, the Majority assumes that Woods was entitled to the

---

[3]This case differs from ***Holland*** or ***Giles***. Here, the trial court took the opportunity to test the sufficiency of the State's evidence. After the State rested, Woods's counsel moved for a directed verdict. Citing the Castle Doctrine, Woods's counsel argued, "[T]he State has the burden to prove that my client did not act in self defense, and the State has utterly failed to prove that my client did not have that reasonable fear." The trial court determined otherwise: "[T]he State has submitted sufficient evidence and testimony to join the issue of whether or not the defendant acted in self defense."

presumption. *See* Maj. Op. at ¶60. Under Mississippi law, though, whether Woods is entitled to the Castle-Doctrine presumption or not is a question to be resolved by a jury. ***Newell v. State***, 49 So. 3d 66, 73–78 (Miss. 2010). "In a homicide prosecution where the defendant asserts that the castle doctrine applies, and there are discrepancies in witness testimony, the issue is properly left to the jury." ***Bryant v. State***, 2017 WL 1712543, at \*3 (Miss. Ct. App. May 2, 2017), *reh'g denied* (Sept. 12, 2017) (citing ***Flynt***, 183 So. 3d at 14). This principle was reflected in Jury Instruction D-19, which required the jury to determine that the necessary elements under Section 97-3-15(3) were satisfied by the evidence in the record before applying the presumption to Woods.

¶75. It is not a foregone conclusion that the circumstances described in Section 97-3-15(3) were supported by the evidence. "[T]he jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." ***Meshell v. State***, 506 So. 2d 989, 992 (Miss. 1987) (citing ***Arteigapiloto v. State***, 496 So. 2d 681, 686 (Miss.1986)).

¶76. Much of the evidence that the jury would have considered concerning the application of the presumption was testimony from Doris, a witness whose credibility was attacked a number of times at trial. During cross-examination, Doris admitted that her three written statements (two to law enforcement) each contradicted her testimony on direct examination. Also during cross-examination, Doris claimed that she had told Woods's defense attorney that Pierre had told Woods that he did not get him the other day but was going to get him this time. Doris conceded, though, that none of her prior written statements included Pierre's

28

threat to Woods. From the record evidence, Doris recalls three different accounts of when and where she saw Pierre after he was shot. Further, her testimony and statements differ with one another over whether Woods followed her into the actual house or merely went into the attached laundry room.

¶77.  Again, "the jury is . . . is free to accept or reject all or some of the testimony given by each witness." *Meshell*, 506 So. 2d at 992. At the end of Doris's cross-examination, the following exchange took place:

> Q.  Which one of these stories are we supposed to believe, Ms. Tenner?
>
> A.  The story I told.
>
> Q.  Which time?
>
> A.  Today.
>
> Q.  So the one that you said on the day that it happened, the day that it happened, you want us to believe that what you're telling us today is the truth and that's not?
>
> A.  Today is the truth.

Of course, the jury was not under any requirement to believe that Doris had testified to the truth.

¶78.  In fact, beyond the contradiction in Doris's own testimony and statements, the jury could also have chosen to find Paul Armstead's testimony more credible. Armstead testified that it did not seem odd for Pierre to be across the street that day. According to Armstead, he did not see Doris intervene between Woods and Pierre. He also maintained that he had not been at 14 Hampton Court that day with Woods—contrary to Doris's claim that Armstead

29

had been drinking with Woods in the carport. Further, Armstead stated that he did not see Pierre with a gun, that Pierre did not act as if he had a gun and that Pierre did not lean into his truck before crossing the street toward Woods. The jury is the ultimate fact-finder and properly weighed the conflicting evidence and arrived at a verdict which the evidence supports.

¶79. Because there is not a reasonable probability that the trial court would have granted a motion for a new trial had one been made, I would affirm Woods's conviction. Sufficient evidence supports the verdict, and the verdict is not against the overwhelming weight of the evidence.

**RANDOLPH, P.J., MAXWELL AND BEAM, JJ., JOIN THIS OPINION.**